UNITED STATES of America,
Plaintiff–Appellee,

v.

Nicholas VALENTINO, Defendant–
Appellant.

No. 93–50358.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Feb. 3, 1993.

Decided March 21, 1994.

Bruce I. Hochman, Hochman, Salkin & DeRoy, Beverly Hills, CA, for defendant-appellant.

Scott A. Schumacher, Atty., Tax Div., Washington, DC, for plaintiff-appellee.

Before: BROWNING, FERGUSON, and KLEINFELD, Circuit Judges.

KLEINFELD, Circuit Judge:

Nicholas Valentino raises a question of first impression under the sentencing guidelines for false statements on tax returns.

### FACTS

Appellant pleaded guilty to willfully underreporting his interest income, 26 U.S.C. § 7206(1), and lying about his income in a loan application, 18 U.S.C. § 1014. He stipulated to the facts in his plea agreement. He willfully concealed almost $100,000 of interest income. He used false social security numbers and false names on his accounts to hide the interest from the IRS. When Appellant applied for a loan, he gave the bank what purported to be copies of his tax returns, showing annual taxable income in the hundreds of thousands of dollars, when actually he had filed returns showing no taxable income at all, just losses.

### ANALYSIS

Appellant argues on appeal that the district count should have allowed an evidentiary hearing to determine whether there was a tax loss, and should have grouped the tax and bank fraud counts. We review the district court's interpretation of the guidelines de novo. Factual findings made at sentencing are reviewed for clear error. *United States v. Robinson,* 967 F.2d 287, 293 (9th Cir.1992).

The grouping contention cannot be raised on appeal, because it was not raised below. *See United States v. Flores–Payon,* 942 F.2d 556, 558 (9th Cir.1991). Appellant agreed in his plea agreement that the bank fraud and tax counts should be combined exactly as the court did combine them, and raised no objection when the court did what the plea agreement said it should do.

The tax loss issue under § 2T1.3 of the 1992 guidelines[1] is more substantial. Appellant argues that in addition to understating his interest income, he also understated depreciation deductions to which he was entitled. No additional tax would have been due, had he disclosed the hidden income but also claimed the missed deductions. He stated this contention in his objections to the presentence report, and asked for an evidentiary hearing so that he could prove it.

At the sentencing hearing, the judge decided that, as a matter of law, it did not matter whether Appellant was entitled to the depreciation deductions, or how much the government lost in taxes. All that the district judge thought mattered was how much interest Appellant had concealed. Appellant was sentenced on the basis of the amount of interest willfully not reported, without considering the effect of the omitted depreciation deductions. The court did not reach the issue of whether Appellant really was entitled to depreciation deductions he had not claimed, so did not grant a hearing to determine the extent of any such deductions.

The argument was about how to construe the relevant sentencing guideline:

### § 2T1.3 *Fraud and False Statements Under Penalty of Perjury*

(a) Base Offense Level:

(1) Level from § 2T4.1 (Tax Table) corresponding to the tax loss, if the offense was committed in order to facilitate the evasion of a tax; or

(2) 6, otherwise.

For purposes of this guideline, the "tax loss" is 28 percent of the amount by which the greater of gross income and taxable income was understated, plus 100 percent of the total amount of any false credits claimed against tax. If the taxpayer is a corporation, use 34 percent in lieu of 28 percent.

The court sentenced Appellant under subsection (a)(1), based on the "tax loss" as defined in the guideline.

If the false statement was made "in order to facilitate evasion of a tax," then the amount of the "tax loss" determines the offense level. Appellant cannot get the benefit of subsection (a)(1), because he lied "in order to facilitate the evasion of a tax." Regardless of what his net taxable income might have been after deductions for the particular year, he sought to evade the impact his hidden interest income would have had on the net tax. Based on his use of aliases and false social security numbers for three years, the district judge found that, "Mr. Valentino, for whatever reason, did what he did knowing what he did was to evade taxes." The court also found that he "knew exactly what he was doing" because "there must have been a reason or he wouldn't have done it."

Like the district judge, we cannot know why Appellant concealed $100,000 of income if he was entitled to depreciation deductions which would have sheltered the income from tax. But the judge's finding that he intended to evade taxes was not clearly erroneous. Appellant might have been unaware at the time of the possible depreciation deductions, or they may not have been valid, or he may have been accounting for them differently to carry them over for use on a later return. The district court correctly determined that it did not need to know the size of any unclaimed depreciation deductions, so there was no need for a hearing to find the extent of unclaimed depreciation. "Tax loss" in the applicable guideline refers to income before deductions, partly in order to avoid problems of proof:

> Existence of a tax loss is not an element of these offenses. Furthermore, in instances where the defendant is setting the groundwork for evasion of a tax that is

---

**1.** The 1993 amendments to the guidelines change the provisions construed in this opinion. *See* U.S.S.G. § 2T1.1 (1993); Appendix C, amendment 491. We publish anyway, because cases to which the pre-amendment version will apply may be pending or filed for several years.

expected to become due in the future, he may make false statements that underreport income that as of the time of conviction may not yet have resulted in a tax loss. In order to gauge the seriousness of these offenses, *the guidelines establish a rule for determining a "tax loss" based on the nature and magnitude of the false statements made. Use of this approach also avoids complex problems of proof* and invasion of privacy when returns of persons other than the defendant and co-defendants are involved.

1992 U.S.S.G. § 2T1.3, background commentary (emphasis added).

The guideline refers to § 2T1.3 to provide an alternative minimum standard for the tax loss, which is based on a percentage of the dollar amounts of certain misstatements made in returns filed by the taxpayer. This alternative standard may be easier to determine, *and should make irrelevant the issue of whether the taxpayer was entitled to offsetting adjustments that he failed to claim.*

1992 U.S.S.G. § 2T1.1, application note 4 (emphasis added).

The duration of the sentence is based on the "magnitude of the false statements," not the net of concealed income less unclaimed deductions. "This rough and ready calculation applies the highest marginal rate to the amount of concealed income, disregarding deductions that would have been available had the taxpayer filed an honest return." *United States v. Harvey,* 996 F.2d 919, 920 (7th Cir.1993); *see also United States v. Barski,* 968 F.2d 936, 937 (9th Cir.1992) (rejecting the assumption that under § 2T1.3 "the legally operative fact is the actual amount of tax loss.").

Appellant argues that depreciation is not a deduction, because it is subtracted from gross revenue to determine gross income. Because application note 4 says to determine the amount of understatement of "gross income," he argues that unclaimed depreciation should be subtracted from concealed interest to get a "gross income" figure.

We reject this argument, because it cannot be reconciled with the language quoted above in the background note to 2T1.3, that the calculation of "tax loss" is based on the "magnitude of the false statements." Likewise, application note 4 to 2T1.1 says that the 2T1.3 standard is designed to "make irrelevant the issue of whether the taxpayer was entitled to offsetting adjustments that he failed to claim." The purpose of the guideline rules is to measure the size of the lie, not the size of the government's loss after all corrections in both directions.

Appellant's argument is based on the proposition that depreciation comes off revenue before reaching "gross income." It is true that a schedule 1040 for the years at issue requires a computation of gross income before subtraction of deductions. But depreciation is subtracted from gross revenues on a schedule C before arriving at the business income figure for gross income. In this sense, depreciation is subtracted before gross income is determined. On schedule C, depreciation is treated as a deduction, before arriving at the net profit figure which is added to other sources of income for gross income. Business deductions, such as depreciation, are subtracted as "deductions" to arrive at business income. 26 U.S.C. §§ 61, 62(a)(1), 167 & 168. Neither a purposive nor a literalistic reading of the relevant guidelines support Appellant's construction.

Affirmed.