**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
  *Plaintiff-Appellee,*

v.

ANDY S.S. YIP,
  *Defendant-Appellant.*

No. 08-10235

D.C. No.
CR-02-00225-
DAE-1

OPINION

Appeal from the United States District Court
for the District of Hawaii
David A. Ezra, District Judge, Presiding

Argued and Submitted
October 13, 2009—Honolulu, Hawaii

Filed January 13, 2010

Before: Robert R. Beezer, Susan P. Graber, and
Raymond C. Fisher, Circuit Judges.

Opinion by Judge Graber

**COUNSEL**

Theodore Y. H. Chinn, Honolulu, Hawaii; and Howard T. Chang, Honolulu, Hawaii, for the defendant-appellant.

Leslie E. Osborne, Jr., Assistant United States Attorney, Honolulu, Hawaii, for the plaintiff-appellee.

**OPINION**

GRABER, Circuit Judge:

Defendant Andy S.S. Yip operated an "off-the-books" business selling watches. He failed to report the income to the Internal Revenue Service ("IRS") or to disclose his foreign bank accounts. He then conspired to keep the IRS from recovering the unpaid taxes. Defendant now stands convicted of one count of conspiracy to defraud the United States, one count of filing a false tax return, and two counts of failure to report foreign financial agency transactions. He also pleaded guilty to four additional counts of filing a false tax return. On appeal, he challenges both his convictions and his sentence. In particular, he contends that the district court erred in its calculation of tax loss and in its application of a sentencing enhancement for obstruction of justice. In this opinion, we hold that the district court properly included Defendant's unpaid state taxes in the tax loss computation on which his term of imprisonment and his restitution order were based and that Defendant was not entitled to an imputed deduction for his unpaid state taxes. We also hold that the district court properly applied the sentencing enhancement because Defendant's actions obstructed the IRS audit. In a separate memorandum disposition filed this date, we reject Defendant's challenges to his convictions, but hold that the district court made several errors in sentencing him. We therefore vacate his sentence and remand for resentencing.

## FACTUAL AND PROCEDURAL HISTORY

Defendant owned a legitimate business in Hawaii called A & E Creations. He also operated an off-the-books business that primarily sold watches. On his federal and state tax returns from 1995 to 1998, Defendant failed to report the income from his off-the-books business.

Defendant also opened bank accounts in Hong Kong in his and his wife's names. Defendant's 1998 and 1999 tax returns claimed that he did not have control over any foreign financial accounts. Defendant also failed to file, in 1998 and 1999, the Treasury form that is required when a taxpayer has an interest in a foreign account.

In 1997, IRS Agent Emerald Liburd began a civil audit of Defendant's 1995 tax return that later expanded to include his tax returns from following years. At Defendant's initial interview with Agent Liburd, he told her that he had received a small loan from his father and that he had no foreign bank accounts or foreign transactions. At a follow-up meeting, Defendant and his accountant provided domestic bank statements to Agent Liburd. After analyzing the statements, Agent Liburd concluded that there were unexplained deposits into Defendant's personal accounts of more than $600,000 in 1995. Agent Liburd requested an explanation of these deposits. Defendant then embarked on a campaign to convince the IRS that the funds had come from personal loans.[1]

Defendant provided Agent Liburd in March of 1998 with four promissory notes, allegedly documenting loans to Defendant from Eriko Dmitrovsky, along with a business card containing Dmitrovsky's contact information. Six months later, Defendant sent Agent Liburd four additional promissory

---

[1]Loans do not constitute taxable income. *Comm'r v. Tufts*, 461 U.S. 300, 307 (1983). Thus, had the funds been loan proceeds, Defendant would not have been required to report them as income on his tax returns.

notes, one from Dmitrovsky and one each from three other friends. Defendant also gave Agent Liburd an analysis of his bank accounts purporting to show that the unexplained deposits originated in loans. Eventually, Defendant claimed that a fifth individual had also loaned him money. After the IRS investigation began, Defendant even made ostensible payments on the loans. In June of 1999, Agent Liburd concluded that Defendant's story was implausible, closed the civil audit, and referred the case to IRS criminal fraud investigators.

On September 22, 1999, IRS Criminal Investigator Gregory Miki informed Defendant that he was now under criminal investigation. IRS agents interviewed Defendant's purported lenders in the United States and abroad, finding various inconsistencies surrounding the alleged loans. In 2002, Investigator Miki finished his investigation and referred the case to the Tax Division of the Justice Department. A grand jury indicted Defendant in 2002 for income tax fraud; the indictment was later amended to include additional counts of filing a false tax return, failure to declare a foreign bank account, and conspiracy to defraud the United States.

Defendant pleaded guilty to four counts of filing a false tax return in violation of 26 U.S.C. § 7206(1). The government dismissed one count of filing a false tax return. Defendant went to trial on the remaining counts. A jury convicted Defendant of one count of conspiracy to defraud the United States in violation of 18 U.S.C. § 371, one count of filing a false tax return in violation of 26 U.S.C. § 7206(1), and two counts of failure to report foreign financial agency transactions in violation of 31 U.S.C. §§ 5314, 5322(b) and 31 C.F.R. §§ 103.24, 103.27(c), (d).

At sentencing, the government included in the calculation of tax loss caused by Defendant's conduct the Hawaii state taxes that Defendant had failed to pay on the unreported income. Defendant objected to the inclusion of unpaid state taxes, both because he contended that tax loss for sentencing

purposes is limited to federal tax loss and because the statute of limitations had expired for the state tax violations. In addition, Defendant argued that if the tax loss included the state taxes, he was entitled to credit for a matching deduction on his federal income tax returns for payment of state taxes. His theory was that, had he reported the income honestly and paid the state taxes due on it, the amount of federal tax that he owed would have been reduced by the deduction. Therefore, the total tax loss caused by his fraudulent returns was actually smaller than the sum of the federal and state income taxes corresponding to the relevant amount of unreported income. The district court rejected these objections, calculating the unpaid state taxes as a component of tax loss and refusing to adjust the tax loss for the hypothetical deduction. The district court estimated the combined federal and state tax loss attributable to Defendant's crimes at $1,052,995.

Defendant also objected to a proposed sentencing enhancement for obstruction of justice. Defendant argued that he submitted the false promissory notes and the false bank deposit analysis during the tax audit, rather than during a criminal investigation, and that obstruction of the audit could not support the enhancement. The district court rejected this argument as well. Accordingly, the district court increased Defendant's offense level under § 3C1.1 of the 2001 United States Sentencing Guidelines.

The district court sentenced Defendant to 67 months' imprisonment on the counts of conspiracy and failure to file the Treasury form on his foreign bank accounts, and 36 months' imprisonment on the counts of filing a false tax return, with all terms to run concurrently. The district court also imposed restitution in the amount of $1,758,835. Defendant timely appeals.

## STANDARD OF REVIEW

We review de novo the district court's interpretation of the Sentencing Guidelines. *United States v. Garro*, 517 F.3d

1163, 1167 (9th Cir. 2008). We have noted an intracircuit conflict as to whether the standard of review for application of the Guidelines to the facts is de novo or only for abuse of discretion. *United States v. Rivera*, 527 F.3d 891, 908 (9th Cir.), *cert. denied*, 129 S. Ct. 654 (2008). As in Rivera, we need not resolve that conflict here, because the choice between those standards does not affect the outcome of this appeal. *Id.*

## DISCUSSION

### A.   Unpaid State Taxes

#### 1.   Inclusion of State Taxes in Tax Loss Calculation

[1] Defendant first challenges the district court's calculation of the tax loss resulting from his crimes. The Sentencing Guidelines recommend a longer sentence for tax evasion or tax fraud when the amount of unpaid tax is higher. U.S.S.G. §§ 2T1.1(a)(1), 2T4.1. Therefore, the Guidelines direct a district court to determine the tax loss, which is "the object of the offense (i.e., the loss that would have resulted had the offense been successfully completed)." *Id.* § 2T1.1(c)(1). Defendant contends that "tax loss" is restricted to the amount of unpaid *federal* taxes. We reject his argument and hold that tax loss may properly include unpaid state taxes.

[2] In *United States v. Newbert*, 952 F.2d 281, 284 (9th Cir. 1991), we approved a sentencing calculation that considered "non-federal conduct." The defendant argued that some of his relevant conduct in submitting falsified travel vouchers may have violated state, but not federal, law. *Id.* Nevertheless, we reasoned that the text of the sentencing provisions at issue, U.S.S.G. § 1B1.3(a)(2), (a)(3), directed the court to consider "*all* acts that were part of the same course of conduct or common scheme or plan, as well as *all* harm that resulted from those acts." *Newbert*, 952 F.2d at 284. Therefore, we held that "conduct which could be the basis of state prosecution may be

considered for sentencing purposes on a federal conviction for other conduct which was part of the same common scheme or plan." *Id.* at 285.

**[3]** To be sure, *Newbert* was not a tax loss case. But the same reasoning applies to § 2T1.1. Application note 2 accompanying § 2T1.1 similarly instructs a court to consider "*all* conduct violating the tax laws" (emphasis added), rather than conduct violating the *federal* tax laws. Thus, tax loss may include the unpaid state taxes resulting from a defendant's failure to report the same income to both federal and state tax authorities.

Resisting this conclusion, Defendant argues that incorporating state tax loss into sentencing undermines the Guidelines' goal of uniformity in sentencing because the amount of state tax loss will differ depending on state tax rates. But precisely because state tax rates differ, a taxpayer failing to report the true extent of his income actually causes differing degrees of loss or harm in different states. The Guidelines "take account of a number of important, commonly occurring real offense elements such as . . . the amount of money actually taken," instead of sentencing only on the elements of the offense. U.S. Sentencing Guidelines Manual at 6. Thus, considering state tax loss in sentencing is consistent with the approach of the Sentencing Guidelines. Moreover, in adopting the rule that § 2T1.1 may include state tax loss, we join all the other circuits that have considered the issue. *United States v. Maken*, 510 F.3d 654, 656-59 (6th Cir. 2007); *United States v. Baucom*, 486 F.3d 822, 829 (4th Cir. 2007), *vacated on other grounds*, 128 S. Ct. 870 (2008); *United States v. Powell*, 124 F.3d 655, 664-66 (5th Cir. 1997); *see also United States v. Fitzgerald*, 232 F.3d 315, 318 (2d Cir. 2000) (per curiam) (affirming tax loss calculation that included city and state tax evasion); *United States v. Schilling*, 142 F.3d 388, 394 (7th Cir. 1998) (affirming sentence computed in part on unpaid state taxes).

**[4]** Defendant next argues that, even if tax loss may include unpaid state taxes, the district court should not have considered the Hawaii tax losses in his case because the prosecution of his state tax violations is time-barred under Hawaii law. He relies on the phrasing of our holding in *Newbert*, in which we wrote that the district court may consider "conduct which could be the basis of state prosecution." 952 F.2d at 285. His reliance is misplaced. *Newbert* approved of sentencing that considered *conduct* that violated state law, but did not address any statute of limitations issues. *See R.A.V. v. City of St. Paul*, 505 U.S. 377, 387 n.5 (1992) ("It is of course contrary to all traditions of our jurisprudence to consider the law on [a] point conclusively resolved by broad language in cases where the issue was not presented or even envisioned."). Furthermore, we have already held that relevant conduct under § 1B1.3 may include conduct whose prosecution is precluded by the statute of limitations. *See United States v. Williams*, 217 F.3d 751, 753-54 & n.7 (9th Cir. 2000) (joining eight other circuits in so holding). Unpaid state taxes may be included in the calculation of tax loss whether or not the statute of limitations prevents the state from prosecuting a defendant for his violations of its tax laws. The district court properly included Defendant's unpaid state taxes in its computation of tax loss.

## 2. Deduction for State Taxes

Defendant argues that, if his unpaid state taxes are included in tax loss, he is entitled to a reduction in the total tax loss attributed to him by the amount of the deduction that he could have taken on his federal tax returns for payment of those state taxes. We are not persuaded.

Fifteen years ago, we held that, in calculating tax loss, no allowance was to be made for unclaimed potential deductions. *United States v. Valentino*, 19 F.3d 463, 464 (9th Cir. 1994). *Valentino*, however, involved an earlier version of the tax loss provision, which authorized a calculation method grounded in "the nature and magnitude of the false statements made,"

U.S.S.G. § 2T1.3 cmt. background (1992), rather than in the magnitude of the tax loss that materialized as a result. *Valentino*, 19 F.3d at 465. Indeed, application note 4 for § 2T1.1 stated in 1992 that this method "should make irrelevant the issue of whether the taxpayer was entitled to offsetting adjustments that he failed to claim."

In 1993, Amendment 491 to the Sentencing Guidelines removed the reference to offsetting adjustments and stated that the Guidelines focus on "the amount of loss that was the object of the offense." U.S.S.G. § 2T1.1 cmt. background. The revised version of § 2T1.1 instructed the district court to treat the tax loss "as equal to 28% of the unreported gross income . . . unless a more accurate determination of the tax loss can be made." *Id.* § 2T1.1(c)(1) note A.

Relying on the latter clause, the Second Circuit has concluded that, under the amended Guidelines, tax loss should be adjusted for " 'legitimate but unclaimed deductions.' " *United States v. Gordon*, 291 F.3d 181, 187 (2d Cir. 2002) (quoting *United States v. Martinez-Rios*, 143 F.3d 662, 671 (2d Cir. 1998)). Several other circuits, however, disagree. *United States v. Clarke*, 562 F.3d 1158, 1164 (11th Cir. 2009), *cert. denied*, 2009 WL 3481902 (U.S. Dec. 7, 2009) (No. 09-514); *United States v. Delfino*, 510 F.3d 468, 472 (4th Cir. 2007), *cert. denied*, 129 S. Ct. 41 (2008); *United States v. Phelps*, 478 F.3d 680, 681-82 (5th Cir. 2007) (per curiam)*; United States v. Chavin*, 316 F.3d 666, 677 (7th Cir. 2002); *United States v. Spencer*, 178 F.3d 1365, 1368 (10th Cir. 1999). These sister circuits have offered three reasons to refuse to allow a defendant to reduce tax loss by the amount of unclaimed deductions. First, deductions are not permissible if they are unintentionally created or are unrelated to the tax violation, because such deductions are not part of the "object of the offense" or intended loss.[2] *Clarke*, 562 F.3d at 1164;

---

[2]The deductions at issue in Defendant's case are, of course, related to his offense. Therefore, we do not rely on this reason in our adjudication of his appeal.

*Phelps*, 478 F.3d at 682; *Chavin*, 316 F.3d at 677; *see also United States v. Blevins*, 542 F.3d 1200, 1203 (8th Cir. 2008) (noting that the defendant's unclaimed deductions were unrelated to his tax fraud, but declining to reach issue of whether unclaimed deductions may ever reduce calculated tax loss), *cert. denied*, 129 S. Ct. 1024 (2009). Second, the revisions of Amendment 491 were so extensive that the mere fact that the revised § 2T1.1 does not include the former "offsetting adjustments" reference fails to demonstrate that deductions are now permissible. *Chavin*, 316 F.3d at 678. Finally, our sister circuits reject the nebulous and potentially complex exercise of speculating about unclaimed deductions. *Delfino*, 510 F.3d at 473; *Chavin*, 316 F.3d at 678. The Tenth Circuit observed that it does not interpret the Guidelines "as giving taxpayers a second opportunity to claim deductions after having been convicted of tax fraud. . . . Rather, we are merely assessing the tax loss resulting from the manner in which the defendant chose to complete his income tax returns." *Spencer*, 178 F.3d at 1368.

We are persuaded by the Fourth, Fifth, Seventh, Tenth, and Eleventh Circuits. The amendment to § 2T1.1's application notes is irrelevant to our analysis. It is true that the notes no longer state that § 2T1.3's alternative minimum standard "may be easier to determine, and should make irrelevant the issue of whether the taxpayer was entitled to offsetting adjustments that he failed to claim." But this sentence was deleted when § 2T1.3 was deleted in its entirety from the Guidelines. As a reference to § 2T1.3 was no longer logical, such a change does not show an intent to allow unclaimed deductions sufficient to undercut our decision in *Valentino*.

**[5]** Section 2T1.1 does permit "a more accurate determination" of tax loss than the 28% approximation. A more accurate determination might involve applying a different tax rate or incorporating exemptions and deductions legitimately claimed by the taxpayer on a tax return. But that section does not require a court to speculate about tax deductions that the

taxpayer chose not to claim.[3] We hold that § 2T1.1 does not entitle a defendant to reduce the tax loss charged to him by the amount of potentially legitimate, but unclaimed, deductions even if those deductions are related to the offense.

**[6]** In Defendant's case, he cannot even argue that the state taxes are legitimate, but unclaimed, deductions. The state taxes are not legitimate deductions because *he did not pay them*. A cash-basis taxpayer may deduct state and local taxes "for the taxable year within which paid." 26 C.F.R. § 1.164-1(a). The district court properly refused to reduce the tax loss attributed to Defendant to account for an *imputed* deduction from his *unpaid* state taxes.

## B.  Obstruction of IRS Audit

Defendant also disputes the district court's two-level enhancement of his sentence for obstruction of justice. Among the acts that the district court cited as supporting application of the enhancement were Defendant's provision of four false promissory notes and a false bank deposit analysis to Agent Liburd during the audit. Section 3C1.1 of the 2001 version of the Sentencing Guidelines authorized a district court to increase a defendant's offense level by two levels if the defendant "willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the course of the investigation, prosecution, or sentencing of the instant offense of conviction" and if the conduct related to a qualifying offense. Here, Defendant asserts that the audit was not a criminal investigation of the offense of conviction and, thus, that the enhancement was improper.

---

[3]We note, for instance, that a taxpayer is entitled to deduct either state income tax *or* state sales tax, but not both. 26 U.S.C. § 164(b)(5)(A). Some of the states in our circuit impose both an income tax and a sales tax. Reconstructing a hypothetical federal tax return for a resident of one of these states would require selecting between these potential deductions.

**[7]** A defendant's conduct before an investigation begins does not constitute obstruction of justice under the version of § 3C1.1 that was in effect before 2006.[4] For instance, in *United States v. Rising Sun*, 522 F.3d 989, 996-97 (9th Cir. 2008), we held that the enhancement could not be applied to a murder defendant who, on the night of the killings, had attempted to destroy evidence and had threatened his brother to keep him from talking to his girlfriend about the night's events. The enhancement "could only apply if an investigation or prosecution was already in progress when the obstructive actions were taken." *Id.* at 995. Similarly, in *United States v. DeGeorge*, 380 F.3d 1203, 1222 (9th Cir. 2004), we held that the enhancement did not apply to perjury committed during a civil suit between a defendant and his insurance company, where the criminal investigation of the defendant's mail fraud did not begin until after the civil suit ended. Until today, we have never decided whether an IRS audit may constitute an investigation for the purposes of § 3C1.1. We now hold that it may.

Section 3C1.1 itself does not define an "investigation." But in *United States v. Luca*, 183 F.3d 1018, 1022 (9th Cir. 1999), we affirmed application of the enhancement to the submission of false documents to a state administrative agency that was investigating a defendant's Ponzi scheme. We found it significant in *Luca* that the agency was investigating "the same offense" that led to the defendant's federal conviction. *Id.* Two other circuits have likewise held that obstruction during a civil investigation of the *same conduct* that forms the basis of a conviction suffices for application of the enhancement. The First Circuit held that obstruction during administrative

---

[4]In 2006, Amendment 693 to the Sentencing Guidelines replaced the phrase "during the course of the investigation" in § 3C1.1 with "with respect to the investigation" and added commentary explaining that conduct occurring before the start of an investigation may be covered "if [the conduct] was purposefully calculated, and likely, to thwart the investigation." However, this amendment was a substantive change to the Guidelines and cannot be applied retroactively. *Rising Sun*, 522 F.3d at 997.

audits by Medicare and Medicaid may trigger the enhancement, "so long as the investigation which has been obstructed has a sufficient connection to the offense of conviction." *United States v. McGovern*, 329 F.3d 247, 252 (1st Cir. 2003). And the Second Circuit, after noting the extensive overlap between civil and criminal investigations of securities fraud, affirmed application of the enhancement to perjury committed during a civil investigation by the Securities and Exchange Commission. *United States v. Fiore*, 381 F.3d 89, 94 (2d Cir. 2004).

[8] An IRS audit is an official investigation that may be the first step leading to a criminal conviction for tax violations. *United States v. Peters*, 153 F.3d 445, 447 (7th Cir. 1998). The audit places a taxpayer on notice that the government is looking into the accuracy and propriety of his or her tax returns. Evidence gathered during such an audit properly may be transferred to prosecutors. *United States v. McKee*, 192 F.3d 535, 544 (6th Cir. 1999). The IRS may distinguish between the procedures to be followed during the civil and criminal phases of an audit, *Peters*, 153 F.3d at 447, but to a taxpayer under suspicion, the latter merely represents an escalating development in the same underlying investigation. Obstruction during an IRS audit justifies enhancing a defendant's sentence for obstruction "during the course of the investigation." U.S.S.G. § 3C1.1 (2001).

## CONCLUSION

[9] For these reasons, the district court properly charged Defendant with the full amount of his unpaid state taxes and properly enhanced his sentence for obstruction of justice.

Convictions AFFIRMED; sentence VACATED and REMANDED.[5]

---

[5]In a separate memorandum disposition, *see supra*, at 984, we vacate Defendant's sentence and remand for resentencing to address certain defects in his sentence.