**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
*Plaintiff-Appellee,*

v.

EUGENE RAYMOND RISING SUN,
*Defendant-Appellant.*

No. 06-30614

D.C. No.
CR-05-00061-RFC

OPINION

Appeal from the United States District Court
for the District of Montana
Richard F. Cebull, District Judge, Presiding

Argued and Submitted
September 26, 2007—Seattle, Washington

Filed April 14, 2008

Before: Betty B. Fletcher, Andrew J. Kleinfeld, and
Ronald M. Gould, Circuit Judges.

Opinion by Judge Gould

**COUNSEL**

Mark S. Werner, at argument, & Anthony R. Gallagher, on the briefs, Federal Defenders of Montana, Billings, Montana, for appellant Eugene Rising Sun.

Corey Endo, at argument, and William W. Mercer & Lori Harper Suek, on the briefs, U.S. Attorney's Office, Billings, Montana, for appellee United States.

**OPINION**

GOULD, Circuit Judge:

Eugene Rising Sun ("Rising Sun") appeals two consecutive life sentences which were imposed after he pled guilty to two counts of second-degree murder. He argues that the sentencing court erred in applying the enhancement found at U.S.S.G. § 3A1.1(b)(1) for vulnerable victims because of the remote location where the murders occurred and in applying the enhancement found at U.S.S.G. § 3C1.1 for obstruction of justice because he threatened a witness and tried to destroy evidence before the police investigation began. Rising Sun also argues that the sentence was unreasonable. We have jurisdiction to hear the appeal under 28 U.S.C. § 1291, and we vacate and remand for resentencing.

**I**

Koren Diebert was reported missing on November 22, 2003. Five days later her body, along with that of LaFonda Big Leggins, was found in a ditch off Big Horn County Road 50A in Montana, which is part of the Crow reservation. An autopsy revealed that both young women had died from blunt force trauma to their heads caused by a heavy object.

Investigations by law enforcement authorities determined that Diebert and Big Leggins were last seen in the late evening of November 18 in the company of Rising Sun and his two brothers. One witness told investigators that Rising Sun had commented to her that "he had gotten rid of some of his stuff because it was evidence." Another witness reported seeing, on the morning of November 19, a maroon Corsica parked at an abandoned house on the Crow reservation where the Rising Sun family used to live. A third witness had linked that same car to the murders of Diebert and Big Leggins. The FBI obtained a search warrant for the abandoned house, which was executed on December 5, 2003. In a trash can out-

side the house, agents found items of clothing and jewelry that appeared to have blood stains on them and that also appeared to have been burned. DNA tests conducted on the items seized from the trash can revealed that these items contained blood from Diebert and Big Leggins.

Rising Sun's younger brother Moses was interviewed twice by law enforcement personnel. During the first interview, three days after Diebert was reported missing, he denied having seen either of the young women after the early evening of November 18. When interviewed again in January of 2004, however, Moses admitted that on November 18, after a night of heavy drinking, he and his two brothers had driven with Diebert and Big Leggins to a remote area several miles south of Harden, Montana so they could "party together." Moses said that the group decided to stop the car so that some of the occupants could relieve themselves, and that when the vehicle stopped, both Rising Sun and Big Leggins got out of it. Soon thereafter, Moses heard "a thump" and a woman screaming. He then saw Rising Sun "smack" Big Leggins and accuse her of being a "narc." According to Moses, Rising Sun dragged Big Leggins into a nearby ditch and then chased after Diebert and repeatedly hit her with an object he had obtained from the trunk.

Moses further stated that when the brothers returned to their mother's home later that night, Rising Sun took a shower and placed the clothes he had been wearing in a plastic bag. Moses also said that Rising Sun then told him not to tell his girlfriend about what had happened, and that when Moses said that he was going to tell, Rising Sun threatened him with a knife.

Rising Sun was indicted on one count of first-degree murder on May 20, 2005. Pursuant to a plea agreement, he later pled guilty to a superseding information charging him with two counts of second-degree murder under 18 U.S.C. §§ 1153(a) and 1111. As part of this plea agreement, Rising

Sun stated his willingness to serve consecutive sentences on the two counts.

After assigning a base offense level of 33 for each count pursuant to the 2003 edition of the federal Sentencing Guidelines,[1] the presentence report recommended applying two two-level enhancements, one for vulnerable victims under U.S.S.G. § 3A1.1(b)(1) because the killings occurred in a remote location, and one for obstruction of justice under U.S.S.G. § 3C1.1 because Rising Sun had attempted to destroy evidence and had threatened his brother Moses to prevent him from talking to his girlfriend about the murders. At Rising Sun's sentencing hearing in November 2006, the district court adopted both of these enhancements over Rising Sun's objections and also imposed a three-level upward departure based on Extreme Conduct and Criminal Purpose, resulting in an adjusted offense level of 39. The applicable sentencing range, taking into account Rising Sun's criminal history category of IV, was 360 months to life for each count of second-degree murder. The district court then determined that because of the heinous nature of these murders and Rising Sun's violent criminal history, it would impose the maximum allowable sentence of life for each offense, with the sentences to be served consecutively. This appeal followed.

## II

We review a district court's interpretations of the federal Sentencing Guidelines de novo, its factual determinations for

---

[1]Although a sentencing court ordinarily will apply the version of the Guidelines in effect on the date of sentencing, if doing so would violate the Ex Post Facto Clause of the United States Constitution, "the court shall use the [version] in effect on the date that the offense of conviction was committed." U.S.S.G. § 1B1.11 (2006). The district court determined that the Ex Post Facto Clause was implicated in Rising Sun's case because the base offense level for second-degree murder rose from 33 to 39 between the 2003 and 2004 editions of the Manual. Accordingly, it was correct for the district court to use the 2003 edition of the Guidelines Manual.

clear error, and its application of the Sentencing Guidelines to the facts as it has found them for abuse of discretion. *United States v. Kimbrew*, 406 F.3d 1149, 1151 (9th Cir. 2005). If we apply this framework to one of the issues presented in this case, we review the district court's determination that Diebert and Big Leggins were vulnerable because they were assaulted in a remote location as a factual finding for clear error, while we review the conclusion that a two-level enhancement for vulnerable victims was appropriate because of that remote setting for abuse of discretion. *See United States v. Weischedel*, 201 F.3d 1250, 1252, 1255 (9th Cir. 2000). If upon review this court finds that the district court committed a "significant procedural error," *see Gall v. United States*, 128 S. Ct. 586, 597 (2007), such as a "material error in the Guidelines calculation that serves as the starting point for the district court's sentencing decision, we will remand for resentencing pursuant to 18 U.S.C. § 3742(f)." *United States v. Cantrell*, 433 F.3d 1269, 1280 (9th Cir. 2006). If no such material error in applying the Guidelines is found, however, we may go on to evaluate the sentence for its substantive reasonableness under an abuse of discretion standard. *See Gall*, 128 S. Ct. at 597; *Cantrell*, 433 F.3d at 1280.

## III

Rising Sun argues that the "vulnerable victim" enhancement described in U.S.S.G. § 3A1.1(b)(1) should not have been applied to his sentence for two reasons. First, he contends that no personal traits of either Diebert or Big Leggins rendered them particularly susceptible to his criminal conduct. Second, he suggests that the two victims voluntarily accompanied him and his brothers to the remote location where they were killed and were not lured there as part of a deliberate scheme. We agree with the first of these objections and conclude that the "vulnerable victim" enhancement should not have been applied in Rising Sun's case because none of the victims' characteristics, alone or in combination with surrounding circumstances of the crime, made them more vulner-

able to Rising Sun's criminal conduct than any other members of the public.

**[1]** Section 3A1.1(b)(1) of the U.S. Sentencing Guidelines provides for a two-level enhancement where "the defendant knew or should have known that a victim of the offense was a vulnerable victim." Application note 2 in the commentary to this Guideline states that " 'vulnerable victim' means a person . . . who is unusually vulnerable due to age, physical or mental condition, or who is otherwise particularly susceptible to the criminal conduct." § 3A1.1 cmt. n.2. We have interpreted the "otherwise particularly susceptible" language as requiring the sentencing court to consider both the victim's characteristics and the "circumstances surrounding the criminal act." *United States v. Peters*, 962 F.2d 1410, 1417 (9th Cir. 1992). However, although circumstances are to be considered, we also have held that where none of the victims' personal characteristics made them particularly susceptible to the crime at issue, the enhancement should not have been applied because nothing about the victims "render[ed] the defendant's conduct more criminally depraved" than if the same crime had been perpetrated against others. *See United States v. Castellanos*, 81 F.3d 108, 111 (9th Cir. 1996).

**[2]** We reconciled these two precedents in *United States v. Weischedel*, explaining that in both *Peters* and *Castellanos*, "we examined the personal traits of the victims and the specific circumstances in which the victims found themselves when the crimes were committed, and asked whether there were any characteristics or circumstances that made the victims particularly susceptible to the crime." 201 F.3d 1250, 1254-55 (9th Cir. 2000). *Weischedel* involved a married couple who sought to steal a car by representing to a car salesman that they were potential customers and asking him to accompany them on a test drive. *Id.* at 1252. After the three had driven to a remote area, the husband fatally shot the car salesman and the couple took possession of the vehicle. *Id.* The district court at sentencing imposed the two-level "vulnerable

victim" enhancement on the ground that the salesman's age (sixty) and occupation, as well as the circumstances in which he found himself in that he was driven to a remote location by people he thought were customers, rendered him particularly susceptible to the defendants' criminal conduct. *Id.* at 1252-53. In affirming the district court's application of the enhancement, we held:

> Here the district court properly looked to the particularly vulnerable circumstances in which [the victim] found himself after being placed in the front seat with his killer behind him and driven to a remote spot, at the behest of persons he believed his job obligated him to accommodate. The district court did not abuse its discretion in imposing the "vulnerable victim" adjustment.

*Id.* at 1255.

The district court in this case, unlike the district court in *Weischedel*, did not mention any characteristics of Diebert or Big Leggins that made them particularly vulnerable victims. Instead, the sentencing court focused exclusively on the remote location in which the murders took place. The district court reasoned that because of the uninhabited area in which they found themselves, "the victims knew that there was no avenue of escape" and "no possibility that anyone could assist or stop" Rising Sun's attack. Citing *Weischedel*, the sentencing court then concluded that the remote location of the murders was "one of those circumstances rendering the victim otherwise particularly susceptible" under which the enhancement could be applied.

[3] In our view, a correct reading of *Weischedel* does not support the district court's conclusion. Specifically, it was a crucial factual component of *Weischedel* that the car salesman's job required him to go to a remote area designated by someone he thought was a potential customer. Nothing in that

case implied that the remote location where the victim was shot would have been independently sufficient to support the enhancement. Rather, we made clear that the circumstances that made the victim particularly susceptible to the criminal conduct resulted from the requirements of his job. *See Weischedel*, 201 F.3d at 1253. By contrast, in this case Diebert and Big Leggins were not obligated to accompany Rising Sun, and there were no personal characteristics of either victim referred to by the district court that made them any more likely than the average person to go with Rising Sun and his brothers to the remote area where they were killed. If we were to disregard this distinction and uphold a "vulnerable victim" enhancement simply because the crime occurred in a remote location, without reference to any characteristics particular to the victim, we would be broadening the enhancement to the point where it might be applied to almost any case where a crime was committed in an unprotected or sparsely populated area.

**[4]** We do not hold that a remote location may never be considered among the circumstances of the crime that may bear on the applicability of the vulnerable victim enhancement. Such an approach would not be appropriate given the required case-by-case nature of this inquiry and the deference we accord to district courts in their role as finders of fact. We simply hold that there must be something about the victim that renders him or her more susceptible than other members of the public to the criminal conduct at issue. A remote crime location alone is not enough to sustain this enhancement. Accordingly, we hold that the district court in this case abused its discretion when it applied the "vulnerable victim" enhancement to Rising Sun's sentence solely based on the remote location in which Big Leggins and Diebert found themselves when attacked. Because we find error in the application of the "vulnerable victim" enhancement on this basis, we do not reach Rising Sun's alternative argument that the enhancement can apply only if the victim is lured to the remote location for a criminal purpose.

## IV

We next address the issue of whether the district court properly imposed the two-level enhancement found at U.S.S.G. § 3C1.1 for obstruction of justice when Rising Sun's obstructive acts, threatening his brother not to talk about what he had witnessed and attempting to destroy his blood-stained clothing by burning it, both occurred before any police investigation had begun. Relying on circuit precedent, the language of the Guideline, and its commentary, we conclude that this enhancement should not have been applied.

The 2003 version of the Sentencing Guidelines, under which Rising Sun was sentenced, stated that "[i]f a defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the investigation, prosecution, or sentencing of the instant offense," his offense level should be increased by two levels. U.S.S.G. § 3C1.1. We have previously held that this wording precluded the imposition of the enhancement where the defendant's obstructive conduct, secreting boxes of records in Costa Rica, occurred at least eleven months before the commencement of a criminal investigation against him for tax fraud to which those records proved relevant. *United States v. Ford*, 989 F.2d 347, 352 (9th Cir. 1993) (interpreting an earlier but identically worded version of U.S.S.G. § 3C1.1). While the length of the delay between the obstructive actions and the onset of an investigation might offer a way of distinguishing *Ford*, a more recent Ninth Circuit case has reaffirmed the strictness of § 3C1.1's temporal requirement. In *United States v. DeGeorge*, we held that a defendant's perjury during his civil trial, which took place before his criminal investigation for mail fraud began, could not be considered an "obstruction offense" because the text of § 3C1.1 requires that "the perjury . . . occur '*during* the course of the [criminal] investigation.' " 380 F.3d 1203, 1222 (9th Cir. 2004) (alterations in original).

Application note 1 in the commentary to the 2003 version of § 3C1.1 also supports the conclusion that the enhancement

could only apply if an investigation or prosecution was already in progress when the obstructive actions were taken. That note stated that "[the obstruction] adjustment applies if the defendant's obstructive conduct . . . occurred during the course of the investigation, prosecution, or sentencing of the defendant's instant offense of conviction." U.S.S.G. § 3C1.1 cmt. n.1 (2003). The note was added by amendment in 1998 in order to clarify "the temporal element of the obstruction guideline (*i.e.*, that the obstructive conduct must occur during the investigation, prosecution, or sentencing of the defendant's offense of conviction)." U.S.S.G. supp. to app. C, Amend. 581 (1998). This application note removed any ambiguity about the Sentencing Commission's intent to include a temporal restriction in § 3C1.1.

**[5]** In applying § 3C1.1 to increase Rising Sun's sentence, the district court relied in part on subsection (d) of application note 4 interpreting § 3C1.1, which lists examples of conduct to which the obstruction enhancement would apply. These examples include "destroying or concealing or directing or procuring another person to destroy or conceal evidence that is material to an official investigation or judicial proceeding (e.g., shredding a document or destroying ledgers upon learning that an official investigation has commenced *or is about to commence*)." § 3C1.1 cmt. n.4(d) (emphasis added). Application notes like this one are treated as authoritative interpretations of the Sentencing Guidelines, unless they violate the Constitution or a federal statute or are inconsistent with, or a plainly erroneous reading of, the Guideline they are meant to interpret. *See United States v. Powell*, 6 F.3d 611, 613 (9th Cir. 1993) (citation omitted). When commentary and the Guideline it interprets are inconsistent so that "following one will violate the dictates of the other, the Sentencing Reform Act itself commands compliance with the guideline." *Stinson v. United States*, 508 U.S. 36, 43 (1993). Application note 4(d) is clearly inconsistent with the language of the Guideline which requires that the obstructive conduct occur "*during* the investigation, prosecution, or sentencing of the instant

offense." U.S.S.G. § 3C1.1 (emphasis added). We therefore apply our precedent holding that U.S.S.G. § 3C1.1 contained a temporal restriction and that the enhancement could not apply if the obstructive conduct occurred before the investigation began. *See DeGeorge*, 380 F.3d at 1222; *Ford*, 989 F.2d at 352.

While most circuits that have addressed the issue of pre-investigation obstruction and § 3C1.1, particularly in the wake of the 1998 amendment, have followed our approach, many have done so with reluctance. For example, the Sixth Circuit in *United States v. Baggett* recognized that "[f]ollowing the [1998] amendment, this circuit has adhered to . . . [a] strictly temporal analysis" of § 3C1.1, but opined that "it seems counter-intuitive to say that threats made by a defendant to prevent a victim from reporting conduct that later results in a conviction do not constitute obstruction of justice." 342 F.3d 537, 541-42 (6th Cir. 2003). Perhaps in response to such policy concerns, in 2006 the Sentencing Commission amended this Guideline to remove the temporal dimension from § 3C1.1. The version in effect beginning with the 2006 edition of the Guidelines provides:

> If . . . the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice *with respect to* the investigation, prosecution, or sentencing of the instant offense of conviction, . . . increase the offense level by 2 levels.

§ 3C1.1 (2006) (emphasis added). Furthermore, the new application note 1 in the commentary to § 3C1.1 states that "[o]bstructive conduct that occurred prior to the start of the investigation of the instant offense of conviction may be covered by this guideline if the conduct was purposefully calculated, and likely, to thwart the investigation or prosecution of the offense of conviction." *Id.* § 3C1.1 cmt. n.1. This application note would appear to be an almost letter-perfect description of the conduct that Rising Sun engaged in after

committing the murders; nonetheless, it cannot be applied to his case.

**[6]** Although Rising Sun was sentenced in November of 2006, his sentence was calculated based on the 2003 edition of the Guidelines in order to avoid an Ex Post Facto Clause violation. *See* U.S.S.G. § 1B1.11(b)(1). Where an earlier edition of the Guidelines is used, that earlier edition must be used in its entirety with one exception: "the court shall consider subsequent amendments, to the extent that such amendments are clarifying rather than substantive changes." *Id.* § 1B1.11(b)(2). Amendment 693 to the Guidelines in 2006, which changed the language of § 3C1.1 to omit the temporal requirement and added new application note 1 on pre-investigation conduct, was not described as a clarifying amendment. Rather, its stated purpose was to resolve "a circuit conflict regarding the issue of whether pre-investigative conduct can form the basis of an adjustment under § 3C1.1." U.S.S.G. supp. to app. C, Amend 693 (2006). This was a substantive change, not merely a clarification, and so this amendment cannot properly be considered in determining Rising Sun's sentence. Consequently, the district court abused its discretion in applying the two-level "obstruction of justice" enhancement solely on the basis of actions that Rising Sun took before an investigation had begun.

## V

Because we conclude that material errors affected the Guidelines calculation that served as the starting point for the district court's sentencing decision, we vacate Rising Sun's sentence and remand this matter for resentencing. *See Gall*, 128 S. Ct. at 597 (2007) (holding that "the appellate court must . . . first ensure that the district court committed no significant procedural error" and should consider the substantive reasonableness of the sentence only if "the district court's sentencing decision is procedurally sound"); *United States v. Carty*, No. 05-10200, 2008 WL 763770, at *5 (9th Cir. March

24, 2008) (en banc) ("On appeal, we first consider whether the district court committed significant procedural error . . ."); *United States v. Cantrell*, 433 F.3d at 1280 ("[A] material error by the district court in calculating the applicable Guidelines range is grounds for resentencing, just as it was before *Booker*."). We therefore decline to reach Rising Sun's argument regarding the reasonableness of his sentence under *Booker*.

**VACATED AND REMANDED.**