**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 10-10383 |
| Plaintiff - Appellee, | D.C. No. 09-cr-00058-RMW |
| v. | |
| RAFIC LABBOUN, | MEMORANDUM[*] |
| Defendant - Appellant. | |

Appeal from the United States District Court
for the Northern District of California
Ronald M. Whyte, District Judge, Presiding

Argued and Submitted December 6, 2011
San Francisco, California

Before: O'SCANNLAIN and BERZON, Circuit Judges, and LASNIK, District
Judge.[**]

Raffic Labboun appeals his conviction of seven counts of bank fraud in

violation of 18 U.S.C. § 1344(1). As alleged by the government and found by the

jury, each of these counts arose from an alleged credit card "bust out" scheme in

---

[*]     This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

[**]     The Honorable Robert S. Lasnik, United States District Judge for the
Western District of Washington, sitting by designation.

which Labboun used "bad checks" to pay off outstanding credit card account balances and then incurred or attempted to incur additional charges on those accounts before the checks bounced. He raises eight issues on appeal. We have jurisdiction under 28 U.S.C. § 1291, and we affirm.[1]

1. The district court did not err in determining that venue was appropriate in the Northern District of California. "Any offense involving . . . transportation in interstate or foreign commerce . . . is a continuing offense and, except as otherwise expressly provided by enactment of Congress, may be inquired of and prosecuted in any district from, through, or into which such commerce . . . moves." 18 U.S.C. § 3237(a). And, as found by the district court, Labboun's "fraud involved the use of bad checks drawn on an account in the district to pay on credit card accounts . . . opened by defendant in the district."

2. The court did not err in refusing to dismiss Count 3, Count 4, Count 5, or Count 7 for failing to assert a violation of § 1344(1). Labboun's contention that the counts were infirm because none alleged any "subsequent purchases" is not supported by either circuit law or the record before us. *United States v. Rizk*, 660 F.3d 1125, 1135 (9th Cir. 2011) ("This circuit 'has never adopted a "risk of loss"

---

[1] We presume the parties are familiar with the facts of the case and thus do not repeat them here.

2

analysis in bank fraud cases.'" (quoting *United States v. Wolfswinkel*, 44 F.3d 782, 786 (9th Cir. 1995))); *see United States v. Mason*, 902 F.2d 1434, 1442 (9th Cir. 1990).

Even assuming we were inclined to adopt a "risk of loss" requirement to establish a § 1344(1) violation, evidence was introduced at trial that Labboun caused his creditors to extend him credit otherwise not available to him when he submitted "bad checks" to them. And we have previously held that the extension of credit equates to risk of loss. *Mason*, 902 F.2d at 1442–43; *see United States v. Estacio*, 64 F.3d 477, 480 (9th Cir. 1995) ("When Estacio directed the deposit of checks drawn on insufficient funds, . . . he unquestionably knowingly promoted the commission of bank fraud as defined in 18 U.S.C. § 371 and § 1344."). Although no additional credit was extended to Labboun by the bank implicated in Count 7, the proximity of Labboun's payment and the use of sequential checks demonstrates that the payment was an attempt to obtain an extension of credit, which failed only because the account had been suspended.

3. The court did not abuse its discretion in admitting the AmEx evidence. This evidence was "inextricably intertwined" with the course of conduct underlying each count. *United States v. Williams*, 989 F.2d 1061, 1070 (9th Cir. 1993) ("The policies underlying rule 404(b) are inapplicable when offenses

3

committed as part of a 'single criminal episode' become other acts simply because the defendant 'is indicted for less than all of his actions.'" (citation omitted)). It was both "a part of the transaction that serves as a basis for the criminal charge," and "necessary to . . . permit the prosecutor to offer a coherent and comprehensible story regarding the commission of the crime." *United States v. Rrapi*, 175 F.3d 742, 748–49 (9th Cir. 1999) (alteration in original) (citations and internal quotation marks omitted).

4. The court did not err in admitting the testimony of the government's expert. Labboun concedes that she was an expert, and we are not persuaded that her testimony did not assist the trier of fact. Fed. R. Evid. 702; *cf. United States v. Mejia-Luna*, 562 F.3d 1215, 1219 (9th Cir. 2009) ("The federal courts uniformly hold . . . that government agents or similar persons may testify as to general practices of criminals to establish the defendants' modus operandi." (alteration in original) (citation and internal quotation marks omitted)). Nor are we persuaded that the expert's testimony violated Federal Rule of Evidence 704(b). *United States v. Morales*, 108 F.3d 1031, 1041 (9th Cir. 1997) (en banc) ("Rule 704(b) does not preclude expert testimony from which a jury might infer that a criminal defendant did or did not possess the requisite *mens rea*."). The trial judge acted well within the bounds allowed by our precedent in permitting the expert to testify

4

only about the general operation of a "bust out" scheme and precluding the United States from using her as a summary witness.

5. We also cannot agree that the court permitted either a constructive amendment of the indictment or a fatal variance from it. Labboun's contention that the district court "ruled that the government no longer needed to prove to the jury that the fraud was occasioned by Labboun sending in checks to the credit card banks with knowledge of the insufficient funds for the checks" is flatly refuted by the record. His second contention fares no better. The indictment was not altered or broadened by the introduction of evidence regarding Labboun's accrual of balances on his accounts. Rather, the indictment itself refers to these balances.

6. "[V]iewing the evidence in the light most favorable to the prosecution," the evidence was more than sufficient to support the jury's verdict. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). The United States introduced evidence that Labboun never reported his cards missing, that Labboun's card was swiped for one of the purchases in Saudi Arabia, that at least one of the payments was made by an actual check bearing what appeared to be Labboun's signature, and that the individual making the fraudulent telephonic payments had access to information known only to Labboun.

5

7. Labboun's sentence was not illegal. First, the district court correctly applied a preponderance of the evidence standard to establish the loss amount. *United States v. Watts*, 519 U.S. 148, 157 (1997) ("[A] jury's verdict of acquittal does not prevent the sentencing court from considering conduct underlying the acquitted charge, so long as that conduct has been proved by a preponderance of the evidence."); *United States v. Hopper*, 177 F.3d 824, 832–33 (9th Cir. 1999) (holding that a "four-level increase in sentence is not an exceptional case that requires clear and convincing evidence").

Second, the court properly included the amount of the bad checks in its loss calculation. *United States v. Gilchrist*, 658 F.3d 1197, 1202 (9th Cir. 2011) ("[I]ncluded in the Guidelines' alternate methods of calculating intended loss is the tallying of deposited fraudulent checks."); *United States v. Ali*, 620 F.3d 1062, 1074 (9th Cir. 2010) (noting that a court must make only "'a reasonable estimate of the loss, given the available information'" (quoting *United States v. Bussell*, 504 F.3d 956, 960 (9th Cir. 2007))). Though the court ultimately erred by including late fees and finance charges in its calculation, U.S.S.G. § 2B1.1 application note

3(D)(i), this error was harmless. The offense level would remain the same under the revised loss amount of $146,609.[2] U.S.S.G. § 2B1.1(b)(1).

Finally, we see no basis for concluding that Labboun's sentence was substantively unreasonable. Labboun was sentenced to 27 months—the bottom of the applicable Guidelines range. *United States v. Carty*, 520 F.3d 984, 991 (9th Cir. 2008) (en banc) ("[T]he Guidelines are the starting point and the initial benchmark . . . ." (citation and internal quotation marks omitted)). Moreover, the record plainly demonstrates that the court considered each of the 18 U.S.C. § 3553 factors and adequately explained why it considered that within-Guidelines sentence appropriate. *Id.* at 991–94.

8. Because we have failed to find any error, Labboun cannot be entitled to reversal for alleged cumulative error. *United States v. Jeremiah*, 493 F.3d 1042, 1047 (9th Cir. 2007).

**AFFIRMED.**

---

[2] Because the inclusion or exclusion of the AmEx charges would not affect the offense level calculation, *see* U.S.S.G. § 2B1.1(b)(1), we do not address them.

7